UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CR-10-116-B-W |
| | ) | |
| JAMES MBUGUA | ) | |

**ORDER ON MOTIONS TO DISMISS**

Facing trial on a charge of conspiring to defraud the United States by arranging sham marriages between United States citizens and foreign nationals, the Defendant has filed three motions to dismiss the indictment. The first alleges that the indictment is insufficient and the next two allege that the indictment violates the statute of limitations and that the events alleged in certain paragraphs of the indictment are time-barred. The Court denies the Defendant's three motions. Even though the indictment alleges open-ended conspiracy dates, the Court concludes it contains sufficient detail to allow the Defendant to defend the charge and to bar double jeopardy. The Court also concludes that the indictment survives temporal attack since it alleges overt acts within the applicable statute of limitations that could constitute the continuation of the central criminal purpose of the conspiracy.

**I.  PROCEDURAL HISTORY**

On July 13, 2010, a federal grand jury indicted James Mbugua, a/k/a David, for engaging in a conspiracy to defraud the United States by arranging or participating in sham marriages between citizens of the United States and foreign nationals in order to facilitate a change in the immigration status of the foreign

1

nationals—a violation of 18 U.S.C. § 371. *Indictment* (Docket # 2). This criminal charge is scheduled for trial during November 2010, with a jury selection date of November 2, 2010. *Trial List* (Docket # 31). On September 28, 2010, Mr. Mbugua filed three motions to dismiss the indictment. *Mot. to Dismiss for Insufficiency of the Indictment* (Docket # 34) (*Insufficiency Mot.*); *Mot. to Dismiss Allegations 3(a), 3(b), and 3(c) of the Indictment as Time Barred* (Docket # 35) (*Time Barred Mot.*); *Mot. to Dismiss the Indictment as Barred by the Statute of Limitations* (Docket # 36) (*Statute Mot.*). The Government responded on October 7, 2010. *Gov't's Mem. in Opp'n to Def.'s Mot. to Dismiss Allegations of Indictment as Time Barred* (Docket # 39) (*Time Barred Opp'n*); *Gov't's Mem. in Opp'n to Def.'s Mot. to Dismiss Indictment as Barred by Statute of Limitations* (Docket # 40) (*Statute Opp'n*); *Gov't's Mem. in Opp'n to Def.'s Mot. to Dismiss for Insufficiency of Indictment* (Docket # 41) (*Insufficiency Opp'n*).

## II. THE DEFENDANT'S CONTENTIONS

### A. Motion to Dismiss for Insufficiency (Docket # 34)

Claiming that the indictment violates the Sixth Amendment and Rule 7, FED. R. CRIM. P. 7, Mr. Mbugua moves for its dismissal. *Insufficiency Mot.* at 5. Though the motion is short, it scatters its contentions. As best the Court can determine, Mr. Mbugua has raised the following complaints about the indictment:

1) That the indictment failed to allege sufficient facts to allow him to prepare a defense or defend against a future charge on the ground of double jeopardy;

2

2) That the indictment specifically fails to allege a criminal act or the name of a co-conspirator;

3) That the indictment fails to allege any adjudication that the so-called sham marriages were in fact illegal; and

4) That the indictment is temporally open-ended in both directions.

*Id.* at 1-5. Mr. Mbugua alleges that it "is impossible on the face of the indictment for [him] to discern what it is he is alleged to have done wrong, when he is alleged to have done wrong, or even who [it is he] is alleged to have done wrong with." *Id.* at 4.

### B. Motion to Dismiss as Time Barred (Docket # 35)

Mr. Mbugua's second motion seeks to dismiss certain allegations in the indictment as time-barred. *Time Barred Mot.* at 1. He observes that the grand jury issued the indictment on July 13, 2010, that there is a five-year statute of limitations for a § 371 conspiracy, and that the indictment alleges that he participated in marriages on February 22, 2005, May 9, 2005, and May 20, 2005. *Id.* at 1-2. He demands that the indictment be dismissed because these marriages were performed outside of the five-year statutory window, and are therefore time-barred. *Id.* at 2-3.

### C. Motion to Dismiss As Barred By Statute of Limitations (Docket # 36)

Mr. Mbugua's third motion to dismiss is a variant of the second. Noting the date the indictment was issued and the five year statute of limitations, Mr. Mbugua says that the only factual allegation that fits within the five-year statutory period is

3

an August 2, 2005 marriage that Mr. Mbugua allegedly arranged and attended. *Statute Mot.* at 2. Contending that, because there is nothing criminal about arranging and attending a marriage, the August 2nd wedding cannot form the basis of the Government's argument that events before the five-year statute of limitations period are tied to a conspiracy that extended into the statutory period. *Id.* He demands that the indictment be dismissed. *Id.* at 3.

## III. THE GOVERNMENT'S RESPONSE

### A. The Government's Response to the Insufficiency Argument

After reciting the familiar rubrics concerning the sufficiency of indictments, the Government notes that, although Mr. Mbugua claims that the indictment does not inform him of what he is alleged to have done wrong, he "summarizes it quite succinctly in subparagraph (3) of his motion":

> The Indictment alleges that between February 22, 2005 and August 2, 2005 James Mbugua helped arrange "sham" marriages on four different occasions and that some of these marriages were solely for the purpose of securing U.S. citizenship for individuals seeking to emigrate to this country.[1]

*Insufficiency Opp'n* at 3 (quoting *Insufficiency Mot.* at 1). Although the Government concedes that there is nothing generally illegal about arranging and attending a marriage, it emphasizes that the indictment alleges that Mr. Mbugua's actions were

---

[1] The time span—February 22, 2005 through August 2, 2005—is what Mr. Mbugua claims the Indictment charges. *Insufficiency Mot.* at 1. The indictment actually alleges:

> From a date unknown but not later than February 22, 2005, and continuing until a date unknown but at least October 26, 2006 . . . .

*Indictment* at 1.

4

part of a scheme to arrange sham marriages for money so that the alien participants could gain immigration benefits.  *Id.* at 2-3.

### B. The Government's Response to the Time-Barred and Statute of Limitations Arguments

The Government responds to Mr. Mbugua's statute of limitations arguments by seeking to tie events occurring outside the five-year statutory period to events occurring within the statutory period.  Specifically, the Government argues that "[b]ecause this Indictment was returned against Defendant on July 13, 2010, it is within the statute of limitations so long as any overt act took place after July 13, 2005." *Statute Opp'n* at 5.  The Government asserts that these post-July 13, 2005 acts include:

> Recruit TT traveling from Maine to Massachusetts on February 21, 2006, to attend a CIS interview; Recruit MC traveling from Maine to New York on October 26, 2006, to attend a CIS interview; and Recruit KR traveling from Maine to Massachusetts on April 20, 2006, to attend a CIS interview.

*Id.*  Thus, although "the *marriages* themselves were complete on the date they took place, [outside the statutory period,] the conspiratorial conduct was not." *Id.* (emphasis in original).

### IV. DISCUSSION

#### A. Motions to Dismiss an Indictment: General Principles

By returning an indictment, a grand jury is carrying out a constitutional function set forth in the Bill of Rights.  U.S. CONST. amend. V (stating that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury").  Unlike civil actions, an indictment

5

is not generally subject to dispositive motion practice. "'[D]ismissing an indictment is an extraordinary step.'" *United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000) (quoting *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997)). In *Whitehouse v. United States District Court*, the First Circuit observed that "[w]hen a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury. That power is appropriately reserved, therefore, for extremely limited circumstances." 53 F.3d 1349, 1360 (1st Cir. 1995) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988)).

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Sepulveda*, 15 F.3d 1161, 1192 (1st Cir. 1993). An indictment that alleges a conspiracy must set forth "at least one overt act . . . with a careful particularization of times, locations, and other pertinent circumstances." *United States v. Indorato*, 628 F.2d 711, 718 (1st Cir. 1980).

**B. Insufficiency**

**i. The "Open-Ended" and Insufficient Indictment**

The Court addresses both the "open-ended" and insufficiency arguments at the same time because they are interrelated. Regarding Mr. Mbugua's claim that the indictment is defective because it is open-ended—referring only to "not later

6

than February 22, 2005 and continuing to a date unknown, but at least October 26, 2006"—Mr. Mbugua cites *United States v. Cecil*, 608 F.2d 1294, 1296-97 (9th Cir. 1979), for the proposition that indictments that are "open-ended in both directions" are subject to dismissal.[2] *Insufficiency Mot.* at 3-4. In *Cecil*, the Ninth Circuit addressed an indictment that contained two counts. 608 F.2d at 1295-96. The indictment alleged that both crimes occurred in "the District of Arizona and elsewhere" and began "on or before July, 1975, and continuing thereafter until on or after October, 1975 . . . ." *Id.* The Counts named eleven co-defendants and charged that they engaged in a conspiracy to "commit offenses in violation of" in Count I, 21 U.S.C. § 952(a) and 960(a)(1) and in Count II, 21 U.S.C. § 846. *Id.* Count I alleged that it was the object of the conspiracy to import "large quantities of marihuana . . . into the United States of America from Mexico;" Count II alleged that it was the object of the conspiracy to "distribute quantities of marihuana." *Id.*

Describing the indictment as a "rather barren document," the *Cecil* Court noted that, apart from tracking the language of the statute, the indictment "makes only two specific allegations concerning the conspiracies": that they "occurred in Arizona, Mexico, and elsewhere" and that they named several co-conspirators. *Id.* at 1296-97. The *Cecil* Court also observed that the indictment was "open-ended in

---

[2] For support, Mr. Mbugua also cites *United States v. Abrams*, 539 F. Supp. 378 (S.D.N.Y. 1982). In *Abrams*, the district court dismissed two counts as insufficient, because they merely tracked the language of the statute and alleged that the offenses took place over a nine and twenty-four month period. *Id.* at 384-85. The district court noted that the counts "provide no other factual specifics. They do not name the persons alleged to have been prevented from communicating to federal authorities; they do not identify the criminal statutes to which the obstructed information pertained. Nor do they detail any of the alleged acts of bribery or misrepresentation, or identify with any precision the criminal investigators involved." *Id.* at 385. The court concluded that "the effect of all these factors considered together requires that these counts be dismissed." *Id.* On its face, the indictment in Mr. Mbugua's case is far more detailed than the defective indictment in *Abrams*.

7

both directions." *Id.* at 1297. "In view of these deficiencies," the Court found "that the indictment fails to allege sufficient facts to facilitate the proper preparation of a defense and to ensure that the defendants were prosecuted on facts presented to the Grand Jury." *Id.* The Court reversed the convictions based on the "glaring lack of factual particularity of this indictment." *Id.*

However, Mr. Mbugua's focus on *Cecil* exaggerates its precedential value within the Ninth Circuit; after *Cecil*, the Ninth Circuit clarified that the defect of an open-ended indictment alone "does not automatically render [an indictment] insufficient." *United States v. Miller*, 771 F.2d 1219, 1227 (9th Cir. 1985); *accord United States v. Forrester*, No. 09-50029, 2010 U.S. App. LEXIS 15779, *24 (9th Cir. Jul. 30, 2010); *accord United States v. Rohrer*, 708 F.2d 429, 435 (9th Cir. 1983).

The First Circuit discussed *Cecil* in *United States v. Gonzalez*, No. 90-1088, 1990 U.S. App. LEXIS 16964 (1st Cir. Sept. 11, 1990). In *Gonzales*, the First Circuit addressed an indictment that alleged the acts in Count I took place "from a time unknown to the Grand Jury to and including April 13, 1987" and that the acts in Count III took place "from on or about a time unknown until and including April 13, 1987." *Id.* at *11-12 (internal quotation marks and brackets omitted). In rejecting the defendant's attack on the indictment, the *Gonzalez* Court explained that the indictment in *Cecil* was deficient not merely because it was temporally open at both ends, but because it was so factually lacking "as to deprive the defendants of adequate notice of the charges against them." *Id.* at *17-18. Thus,

8

the conspiracy indictments in *Cecil* "were found deficient for a conjunction of reasons, not simply because the time frame alleged was too general." *Id.*

Here, the Indictment informs Mr. Mbugua:

1) That he is charged with conspiring with others to participate in sham marriages, *Indictment* at 1;

2) That the purpose of the conspiracy was to defraud the United States, *Id.*;

3) That the conspiracy involved alien/spouses, who were foreign nationals, *Id.* at 1-4;

4) That the alien/spouses were lawfully in the United States, but that their permission to remain in the United States was about to expire, *Id.* at 1;

5) That the recruits were citizens of the United States residing in the state of Maine, *Id.*;

6) That one object of the conspiracy was for Mr. Mbugua to profit financially by accepting payments from co-conspirators, *Id.* at 2;

7) That another object of the conspiracy was for each Alien/Spouse to acquire a change of his or her United States immigration status to which he or she would not otherwise have been entitled, *Id.*; and,

8) That Mr. Mbugua was involved in four separate sham marriages: 1) February 22, 2005 between Recruit TT and Alien/Spouse SWK in Newport, Maine; 2) March 9, 2005 between Recruit MC and

Alien/Spouse HO in Newport, Maine; May 20, 1995 between Recruit KR and Alien/Spouse FNW in Newport, Maine, and August 2, 2005 between Recruit DT and Alien/Spouse RWK in Newport, Maine, *Id.* at 2-4.

Measured against the twin concerns in *Hamling v. United States*, in the Court's view, even though the dates in this indictment are open-ended, the indictment: 1) "contains the elements of the offense charged and fairly informs [him] of the charge against which he must defend"; and, 2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."[3] *Hamling*, 418 U.S. at 117.

### ii. Failure to Name the Criminal Act or Co-conspirator

Mr. Mbugua contends that the indictment failed to identify with whom he is supposed to have conspired, the nature of the plan or plot, the facts upon which the Government relies, or any facts that suggest he had criminal intent. *Insufficiency Mot.* at 2-3.

As regards the failure to name co-conspirators, the United States Supreme Court has ruled:

> Of course, at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown.

---

[3] The *Cecil* Court was concerned that if the indictment is not sufficiently detailed, a prosecutor could prosecute a different charge than the one presented to the grand jury. *Cecil*, 608 F.2d at 1296. If so, the grand jury's "protection of a significant check on the power of the courts and prosecutors would thus be lost." *Id.* The detailed contentions in the indictment in this case, however, alleviate this worry.

10

*Rogers v. United States*, 340 U.S. 367, 375 (1951); *accord United States v. Nason*, 9 F.3d 155, 159 (1st Cir. 1993) (stating that "[a] defendant can be indicted and convicted even if the names of his co-conspirators are unknown, as long as the government presents evidence of an agreement between two or more persons"); *accord United States v. Penagaricano-Soler*, 911 F.2d 833, 839 n.5 (1st Cir. 1990) (describing the Supreme Court's statement in *Rogers v. United States* as "settled law").

As regards, Mr. Mbugua's other complaints about lack of specificity, the Court has carefully reviewed the allegations in the indictment and disagrees that it fails to place him on notice of the nature of the plan or plot, the facts upon which the Government relies, or facts that suggest he had criminal intent.[4] *See supra* Part IV.B.i.

### iii. Failure to Allege that the Sham Marriages Were Adjudicated As Illegal

Although Mr. Mbugua contends that the indictment is defective because it fails to present evidence that the allegedly sham marriages have been previously adjudicated as fraudulent, his argument is one for trial, not for a motion to dismiss. At trial, the Government will have the obligation to prove beyond a reasonable doubt that the marriages entered into between the alien/spouses and recruits were in fact sham marriages. But to make the charge, the Government need not

---

[4] Mr. Mbugua cites *United States v. Nance*, 533 F.2d 699 (D.C. Cir. 1976), for the proposition that "the indictment must contain specific allegations rather than a recitation of the acts or practices prescribed by the offense allegedly committed." *Insufficiency Mot.* at 2. The Court is not convinced that Mr. Mbugua's description of *Nance* accurately characterizes the state of the law in the First Circuit; nevertheless, the instant indictment passes muster even under Mr. Mbugua's formulation.

11

demonstrate that another court either civilly or criminally determined that the marriages were fraudulent before Mr. Mbugua can be indicted.[5]

## C. Time-Barred and Statute Motions

The parties agree that the applicable statute of limitations is five years, which makes the critical date July 13, 2005. *See* 18 U.S.C. § 3282(a) (2006); *Statute Mot.* at 2; *Statute Opp'n* at 5. "A conspiracy endures as long as the co-conspirators endeavor to attain the 'central criminal purpose' of the conspiracy." *United States v. Upton*, 559 F.3d 3, 10 (1st Cir. 2009) (citing *Grunewald v. United States*, 353 U.S. 391, 401 (1957)). To effectively withdraw from a conspiracy, a co-conspirator "must act affirmatively to either defeat or disavow the purpose of the conspiracy; mere disagreement with co-conspirators is insufficient to constitute withdrawal." *Id.* at 15 (citing *United States v. Dunn*, 758 F.2d 30, 38 (1st Cir. 1985) (internal quotation marks omitted). The statute of limitations for a conspiracy therefore runs from the last overt act. *Grunewald*, 353 U.S. at 396 (stating that it was "incumbent on the Government to prove that the conspiracy, as contemplated in the agreement as finally formulated, was still in existence on [the outer limit of the statute of limitations] and that at least one overt act in furtherance of the conspiracy was performed after that date").

---

[5] Mr. Mbugua cites no authority for the novel proposition that, before a person can be indicted for conspiring to arrange sham marriages, the Government must prove there has been a prior adjudication that the marriages were fraudulent. The Defendant's contention strikes the Court as plainly wrong. A prior civil adjudication of fraud would be of questionable admissibility in a criminal case, and to the extent Mr. Mbugua contends that there must be a prior criminal conviction, the obvious problem is that if a prior criminal conviction of fraud is essential for proceeding with a prosecution for fraud, there can never be a prior conviction since any prior prosecution would always lack an essential element. At trial, the Government will bear the burden to demonstrate beyond a reasonable doubt that the marriages involved in the conspiracy were fraudulent.

This means that the Government must prove that a member of the conspiracy committed an overt act in furtherance of the conspiracy after July 13, 2005. The Court has carefully reviewed the allegations in the indictment and concludes that for each of the four sham marriages in the indictment, there is an allegation of an overt act subsequent to July 13, 2005.[6]

The Court agrees with the Government that *United States v. Sarantos*, a Second Circuit case, is remarkably similar to the instant case. 455 F.2d 877 (2d Cir. 1972). As the Second Circuit decided *Sarantos* on the same legal principles the First Circuit has elsewhere affirmed, the Court follows *Sarantos* and concludes that the indictment survives Mr. Mbugua's statute of limitations and time-barred motions to dismiss. *Compare Sarantos*, 455 F.2d at 883 (Because, one month after the critical date, a co-conspirator gave false information to an immigration judge for purposes of obtaining permanent residency, the five-year statute of limitations had not run on the conspiracy.) *with Upton*, 559 F.3d at 10 ("A conspiracy endures as long as the co-conspirators endeavor to attain the 'central criminal purpose' of the conspiracy.") *and United States v. Fitzpatrick*, 892 F.2d 162, 166-68 (1st Cir. 1989) (Work done and payment received after the close of the statutory window and in furtherance of a conspiracy was sufficient to extend the conspiracy to within the statute of limitations.).

---

[6] The indictment alleges that after TT and SWK were married on February 22, 2005, they attended an interview on February 21, 2006 at CIS in Boston in support of a petition seeking to have SWK's immigration status changed, that after MC and HO were married on March 9, 2005, they attended an interview on October 26, 2010 at CIS in New York in support of a petition seeking to have HO's immigration status changed, and that after KR and FNW were married on May 20, 2005, they attended an interview on April 10, 2006 at CIS in Boston, Massachusetts in support of a petition to have FNW's immigration status changed. Finally, it alleges that DT and RWK were married on August 2, 2005.

## V. CONCLUSION

The Court DENIES the Defendant's Motion to Dismiss for Insufficiency of the Indictment (Docket # 34), his Motion to Dismiss Allegations 3(a), 3(b), and 3(c) of the Indictment as Time Barred (Docket # 35), and his Motion to Dismiss the Indictment as Barred by the Statute of Limitations (Docket # 36).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 13th day of October, 2010